# In re Mohammad J.A. KHALIFAH, Respondent

File A29 457 661 - San Francisco

*Decided as amended October 5, 1995*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien subject to criminal proceedings for alleged terrorist activities in the country to which the Immigration and Naturalization Service seeks to deport him is appropriately ordered detained without bond as a poor bail risk.

FOR RESPONDENT: Marc Van Der Hout, Esquire, San Francisco, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Shilpa Khagram, General Attorney

BEFORE: Board Panel: SCHMIDT, Chairman; VACCA, Board Member; CASSIDY, Temporary Board Member

SCHMIDT, Chairman:

ORDER:

PER CURIAM. In a decision dated January 9, 1995, the Immigration Judge denied the respondent's application for release on bond and ordered that the respondent be held without bond pending completion of deportation proceedings in his case. On January 13, 1995, the respondent filed a motion to reopen the bond proceedings and to reconsider the January 9, 1995, decision of the Immigration Judge. In a decision dated January 19, 1995, the Immigration Judge denied the respondent's motions. The respondent has appealed from these decisions of the Immigration Judge dated January 9, 1995, and January 19, 1995. The appeal will be dismissed.

The record reflects that the respondent is 38-year-old native and citizen of Saudi Arabia. He entered the United States as a nonimmigrant visitor on December 1, 1994, through the presentation of a nonimmigrant visa issued on August 3, 1994, by the American Embassy in Jiddah, Saudi Arabia. On December 16, 1994, an Order to Show Cause was issued in his case which alleged that on December 16, 1994, the Deputy Assistant Secretary of State for Visa Services, United States Department of State, issued a Certification

of Revocation of the respondent's nonimmigrant visa effective as of the date of visa issuance, and the respondent was charged with deportability under sections 241(a)(1)(A) and (B) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(1)(A) and (B) (1994), for lack of a valid entry visa and for being in the United States in violation of law. The Order to Show Cause also alleged that the respondent had provided financial support for bombing attacks at cinemas in Jordan which resulted in injuries and charged the respondent with deportability under section 241(a)(4)(B) of the Act as an alien who has engaged in terrorist activity. On January 5, 1995, the Immigration and Naturalization Service withdrew the charges of deportability and issued an amended Order to Show Cause which alleged that on January 5, 1995, the Secretary of State made a determination that pursuant to section 241(a)(4)(C) of the Act, the respondent's presence in this country would have potentially serious adverse foreign policy consequences for the United States. The respondent was charged with deportability under that provision. In conjunction with the issuance of the Order to Show Cause, the respondent was detained without bond and he requested a bond determination hearing before the Immigration Judge.

At the bond hearing, the Service maintained that the respondent should be detained without bond because he posed a threat to national security and because he would flee rather than face deportation. In connection with these allegations, the Service presented the Certification of Revocation of the respondent's nonimmigrant visa, which action was based upon the respondent's having allegedly engaged in terrorist activity within the scope of section 212(a)(3)(A)(ii) of the Act, 8 U.S.C. § 1182(a)(3)(A)(ii) (1994). The Service also presented correspondence from Warren Christopher, United States Secretary of State, to the Attorney General expressing his belief that the respondent's presence in this country is detrimental to the foreign policy interests of this country as specified in section 241(a)(4)(C)(i) of the Act and requesting that the respondent be deported to Jordan. The Service also presented correspondence from the United States Deputy Attorney General to the Immigration Judge stating that the deportation of the respondent to a country other than Jordan would be prejudicial to the interests of the United States and that the respondent should be deported to Jordan.

At the bond hearing, the Service also presented evidence detailing the respondent's alleged role in terrorist activities in Jordan. Such evidence consisted of correspondence from Philip C. Wilcox, Jr., United States Department of State Coordinator for Counter Terrorism; a letter from the Jordanian Ambassador to the United States, Fayez A. Tarawaneh, requesting that the respondent be returned to Jordan; a statement from Major General Mohammed Manko, Attorney General for the State Security Court in Jordan; and telexes to the American Consulate in Jordan concerning criminal proceedings against the respondent in Jordan. These materials indicate that the respondent was indicted in Jordan of conspiracy with the intention of committing

terrorist acts. The indictment describes a deliberately unnamed organization in Jordan established for the purpose of fighting tyrant Arab rulers, resisting the "peace process," combating vice, and fighting Jews and Americans. This documentation alleges that the organization collected arms and explosives and attempted a number of bombings in cinemas in Jordan, and also a supermarket there, in January 1994. The respondent's alleged role was training one of the organization's founders at a training camp in the Philippines and agreeing to finance the organization after a visit to Jordan to assess the organization's capabilities in early 1994. As a result of the legal proceeding in Jordan, the respondent was evidently sentenced to death in absentia for his role in the terrorist attacks.

The respondent objected to the acceptance of the documentation submitted by the Service into evidence. The respondent requested that Mr. Wilcox be compelled to testify at the bond hearing and argued that if he did not appear, his correspondence should be disregarded. The respondent also moved to compel the Service to provide all inculpatory materials in its possession and in the possession of a number of designated agencies and to provide him with the materials that form the basis for the opinions of Mr. Wilcox.

For his part, the respondent conceded that he has been sentenced to death as a result of proceedings in Jordan, that the proceedings were held in absentia, and that the proceedings related to accusations of terrorism. The respondent contends, however, that the evidence against him consisted of a statement of an alleged coconspirator and that such statement was coerced, having been obtained after the maker had been physically abused by Jordanian officials. In support of this assertion, the respondent has presented what he claims is the court statement of a codefendant in the Jordanian proceeding in which that individual repudiates his prior inculpatory statement, asserting that it was obtained by torture. The Service and the respondent agree that in any event, if the respondent were to return to Jordan, his conviction would be null and he would be retried. The respondent, however, doubts the fairness of Jordanian proceedings relating to security matters such as presented by his case and has submitted background materials, including reports from Amnesty International on this issue, to support his concerns.

The respondent has also submitted documentation concerning his good character, including personal references from officials of the Philippines, the country where he apparently resides. Such materials reflect his membership and participation in the activities of the International Islamic Relief Organization and the International Relations and Information Center.

Finally, the respondent requested that if he must be detained, he be placed under house arrest with electronic monitoring. On this issue, he has submitted correspondence from a group which has performed such monitoring for various court systems in this country and from individuals who are willing to accept him into their homes for such monitoring.

In considering the respondent's bond application, the Immigration Judge initially denied the respondent's motion to subpoena Mr. Wilcox and to compel disclosure of any inculpatory materials in the possession of the Service and other government agencies. In his assessment, the Immigration Judge relied on *Matter of Chirinos*, 16 I&N Dec. 276 (1977), noting that bond proceedings should be prompt and may be informal with more relaxed rules of evidence so long as such proceedings are fundamentally fair. The Immigration Judge also concluded that the motions need not be granted because he did not rely on such evidence in his decision.

In considering the merits of the bond request, the Immigration Judge concluded that the respondent should be detained without bond because there is a serious risk that he would flee rather than face deportation. The Immigration Judge cited a number of factors in his decision, including the serious charge of deportability in the respondent's case. The Immigration Judge also noted that both the Governments of Jordan and of the United States seek the respondent's return to Jordan, where the respondent faces serious charges. He observed that the respondent in his submissions exhibited a strong distrust of the Jordanian criminal justice system which the Immigration Judge concluded provided the respondent with a great motivation to flee rather than face deportation.

Finally, the Immigration Judge did not accept the respondent's proposal for electronic monitoring with a bond. In this regard, the Immigration Judge determined that it was not clearly established that the organization which the respondent proposed to have monitor him had adequately demonstrated its capability to do so. The Immigration Judge determined, moreover, that because he found the risk of flight was so great and the governmental interest so strong in this case, such proposal was not appropriate. He also noted that the individuals with whom the respondent proposed to reside while subject to monitoring did not know him personally.

On January 13, 1995, the respondent submitted his motion to reopen and reconsider the January 9, 1995, decision of the Immigration Judge. As grounds for reopening, the respondent stated that subsequent to the hearing, he obtained a copy of the confession of his alleged coconspirator in the terrorist activities in Jordan and maintained that such confession does not incriminate him. He also presented a letter from the director of an Islamic school in the Philippines which explains that the respondent's possession when he was apprehended in this country of a manual containing instructions for the building of bombs and incendiary devices was innocent. He also submitted further correspondence from the organization which has proposed to electronically monitor his whereabouts if he is released in which the organization asserts that it can guarantee his continued presence for deportation proceedings. The respondent also maintained that the Immigration Judge was improperly influenced in his decision by pressure from the personal intervention of the Secretary of State and the Attorney General and that the Immigration Judge

erroneously relied on foreign policy concerns. Finally, the respondent asserted that the substituted charge of deportability under section 241(a)(4)(C) of the Act is defective in that such provision is unconstitutionally vague.

In his consideration of the respondent's motion, the Immigration Judge determined that the respondent's contentions were without merit. The Immigration Judge found that the additional documentation concerning the confession of the alleged coconspirator and the correspondence from the Islamic official in the Philippines were irrelevant because he did not rely on those matters in his initial determination. The Immigration Judge reiterated that as the respondent faces the prospect of criminal proceedings in Jordan, such fact gives rise to the risk that he might flee rather than face possible deportation. The Immigration Judge also discounted the documentation concerning the organization which the respondent has proposed to monitor his whereabouts. The Immigration Judge did so finding that where, as here, the risk of flight is great, possibly long term monitoring in the homes of individuals who do not purport to know the respondent personally is inadequate to assure the respondent's appearance at future proceedings. The Immigration Judge also denied that political pressure influenced his decision, observing that his decision was based upon the respondent's likelihood of absconding rather than, as the respondent asserts, foreign policy concerns. Finally, the Immigration Judge found that he had no jurisdiction to consider the constitutionality of the statute he administers. *Matter of U-M-*, 20 I&N Dec. 327 (BIA 1991), *aff'd*, 989 F.2d 1085 (9th Cir. 1993). On appeal, the respondent reiterates his arguments and challenges the Immigration Judge's assessment.

Based upon our review of the record, we find that the Immigration Judge properly determined that the respondent must be detained without bond. We have reviewed the Immigration Judge's decisions and find them well reasoned and correct and we adopt his analysis. The Immigration Judge properly based his decision on the finding that the respondent presents a strong risk that he will flee rather than appear for the deportation process. In making our determination, we have considered the respondent's allegations of error on appeal but find them to be without merit.

The respondent initially claims that the finding that he is a flight risk is unsupported by admissible evidence as the invalidation of the respondent's nonimmigrant visa was not authenticated and the charge of deportability based upon the visa invalidation had been withdrawn. In our review, we find that even if we ignore the visa invalidation as a factor, there is ample basis to find that the respondent presents a serious risk of nonappearance for deportation proceedings. As the respondent is facing serious criminal charges in Jordan in proceedings whose fairness he doubts, such situation is sufficient without more to conclude that the respondent is a poor bail risk.

The respondent also claims that the Immigration Judge was improperly influenced by foreign policy considerations in his decision. We note that this

argument was presented to the Immigration Judge who specifically denied such influence and we see no evidence of it in our review of his actions. We note, however, that it is appropriate to consider that Jordan has been designated as the country of deportation and Jordan seems willing to accept the respondent, yet the respondent understandably does not appear anxious to be returned to that country as he faces criminal charges there.

The respondent also claims that the Immigration Judge erred in finding he was a flight risk based on the Jordanian conviction inasmuch as the respondent maintains that he has not been so convicted. As the Immigration Judge correctly noted in his decision, many of the respondent's own submissions indicate that he has been convicted of participation in a terrorist conspiracy in Jordan. Moreover, as the Immigration Judge properly found and as the respondent concedes in his appellate brief, the respondent is subject to a new trial if he returns to Jordan. Insofar as the respondent has expressed distrust concerning the fairness of such proceeding, it may fairly be concluded that he will attempt to avoid return to Jordan, even to the extent of evading a deportation order if such order should be issued in his case.

The respondent also cites the letters submitted in support of his good character in contending that release on bond is warranted. However, we find, as did the Immigration Judge, that such evidence does not outweigh the great risk that the respondent will abscond rather than surrender for deportation should deportation be ordered.

The respondent also maintains on appeal that the Bail Reform Act applies in his case and he contends that under such procedure, he must be released on bond. In support of this contention, he relies upon *Matter of San Martin*, 15 I&N Dec. 167 (BIA 1974). *Matter of San Martin* involved an alien who had been released on bond in a pending criminal matter, a situation not presented by the respondent's case. Moreover, that decision did not hold that the Bail Reform Act is applicable per se to immigration proceedings but merely observed that many of the factors to be considered under that statute are applicable to immigration proceedings by virtue of the regulations governing such proceedings and Board precedent decisions.

Finally the respondent contends the Immigration Judge erred in denying the respondent's motion for discovery of inculpatory evidence, the subpoena of Mr. Wilcox, and the production of documents relating to the respondent in possession of other government agencies. It is well settled that there is no requirement in bond proceedings for a formal hearing and that informal procedures may be used so long as no prejudice results. *Matter of Chirinos, supra*. As there is no right to discovery in deportation proceedings, no such right exists in the less formal bond hearing procedure. *See Matter of Exilus*, 18 I&N Dec. 276 (BIA 1982). Moreover, we fail to see that the respondent has demonstrated prejudice from the Immigration Judge's ruling. As the respondent concedes that he is subject to criminal proceedings in Jordan, including retrial on the conspiracy charge, such fact alone presents him as a

poor bail risk independent of any consideration of the evidentiary materials to which he objects.

Because the Immigration Judge properly concluded that the respondent is a very poor bail risk, he correctly ordered the respondent detained without bond. Accordingly the appeal from the decisions of the Immigration Judge dated January 9, 1995, and January 16, 1995, is dismissed.